THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARCELINO SANTOS LÓPEZ, Defendant and Appellant.

No. Cr–62–43. Decided March 8, 1963.

594

*Ismael H. Herrero, Jr.,* appointed by the Supreme Court to assist appellant before this Court, for appellant. *J. B. Fernández Badillo, Solicitor General, Héctor R. Orlandi Gómez, Assistant Solicitor General,* and *Jenaro Marchand* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The cumulative effect of the three errors which we discuss below compel us to set aside the judgment rendered by the Superior Court, Arecibo Part, sentencing appellant Marcelino Santos López to serve concurrently indeterminate sentences of .15 to 26 years' imprisonment in the penitentiary for two charges of subsequent burglary in the first degree and to order a new trial. *Cf. People* v. *Túa,* 84 P.R.R. 37 (1961).

1. In the absence of the jury, and in order to establish the voluntariness of a statement given by appellant shortly after the commission of the acts imputed to him, evidence was introduced consisting of the testimony of District Attorney Efraín F. Crespo who testified at length on the circumstances surrounding the taking of the confession. Defendant then took the witness stand and testified that he had

given the statement under threats by the detectives, "intimidated," and on promise of "making him a witness of The People of Puerto Rico." At the close of the presentation of the evidence on this aspect of the case the court stated that:

"The court understands that the statement in this case was voluntarily given by defendant, the defendant in the case, named Marcelino Santos; that by the manner defendant testified—interested, prejudiced against the district attorney and from the district attorney's theory—it does not believe, that he was threatened by the police prior to the time of giving the statement. Nor has he told the truth in connection with the district attorney's promise to make him a witness of the People of Puerto Rico. Furthermore, witness Marcelino Santos López, when testifying on the witness stand, has not said that the content of this statement is false, nor has he said, despite the fact that the court attempted to investigate whether this which appears here was said, that is, insinuated by the district attorney, to which the witness answered that it was not; that the district attorney did not coerce him; that the district attorney did not tell him what he had to testify; that he testified that and that he did so because they promised to make him a witness of The People of Puerto Rico. We do not believe this last version which we have noted because his testimony as a witness of The People of Puerto Rico would not affect, in our opinion, codefendant Pagán. For all of those reasons, we believe that Marcelino Santo's statement was voluntarily given." (Tr. Ev. 139.)

The following incident took place forthwith in the presence of the jury (Tr. Ev. 142, 143–44):

"District Attorney: ...We have a sworn statement and we are going to take the witness stand in order to testify on the voluntariness of the statement given by defendant Marcelino Santos López. *It was so determined as a matter of law* and it is now a question for the jury.

"Hon. Judge: I don't think it is necessary to take the stand now.

"District Attorney: I think so. We presented in evidence a sworn statement given by Marcelino Santos on May 23, 1959.

596

"Mr. Ramos: We must say to the court that we object to the admission of this document because in our opinion said document, the content thereof, was not voluntarily given by my client.

"Hon. Judge: *The court decided otherwise.* The court admits that document and it is marked exhibit No. 17 of The People; and in consonance with its previous ruling, it is ordered that it be read .

(The deputy clerk starts to read aloud the document admitted.)

"Hon. Judge: Before proceeding with the reading of that document, ladies and gentlemen of the jury, pay attention to the document because after it is read it will be necessary to give you an instruction and the basis of a ruling of the court on the nature of the statement.

(The deputy clerk proceeds to read the document aloud.)

"Mr. Juliá: We are going to ask, on behalf of our client, that proper instruction be given to the jury in a case of this nature.

"Hon. Judge: *Ladies and gentlemen of the jury, after hearing the evidence the court ruled, as a matter of law, that this statement was voluntarily given by Marcelino Santos. By the terms of this statement and of the evidence presented and which will be presented in this case as a whole, you may consider the voluntariness or involuntariness of the statement.*" (Italics ours.)

At the opening of the session the following day, the trial judge made the following statements (Tr. Ev. 161-62):

"Hon. Judge: ...I must rectify a ruling made yesterday in connection with defendant's statement and of the district attorney on the voluntariness of the statement sought to be presented in evidence, given by defendant Marcelino Santos. After Marcelino Santos López testified, we concluded, as a matter of law, that it had been voluntarily given. The party, without defendant's objection, offered the document in evidence and it was read to the jury. Offhand we thought that that situation could arise since the party admitted it. But after meditating I have realized that we departed substantially from the procedural rule. So, we must go back in order to follow the course of the evidence sought to be followed now by the district attorney by calling to the witness stand before the jury those

persons who testified, as a result of which the court made the ruling it did but outside the presence of the jury."

The jury was forthwith returned to the courtroom and again District Attorney Crespo and defendant Santos testified on the voluntariness of the confession. At the close of these testimonies the judge charged the jury that "You have heard evidence on the voluntariness of the document. You have power to pass on the truthfulness of the document, in whole or in part" (Tr. Ev. 186). Afterwards, at the instance of the attorney for the other codefendant, he stated that "I must instruct you that, as a matter of fact, you are going to decide whether this statement was given by Marcelino voluntarily, conscientiously. If you conclude that it was voluntarily given, it is within your province to weigh, to pass on the truthfulness of his statement" (Tr. Ev. 189). In his final instructions the magistrate reiterated that "the first step, the first action to be taken, is to determine whether or not it was voluntary. If it was not voluntary, it should not be weighed together with the evidence. If you believe that it was voluntary, you should consider it and then determine whether the entire statement constitutes a piece of truthfulness, or whether that statement tells the truth and in part it does not" (Tr. Ev. 247-48).

 *People* v. *Fournier*, 77 P.R.R. 208, 243 (1954), citing *People* v. *Medina*, 72 P.R.R. 241 (1951); *People* v. *Otero*, 67 P.R.R. 376 (1947); and *People* v. *Declet*, 65 P.R.R. 22 (1945), explained this aspect of the admissibility of confessions and stated that the court should first pass on the voluntariness and to that effect it should hear the evidence of the parties on the matter.[1] If the evidence establishes as a matter of law that the confession was involuntary, such evidence should be excluded and is not presented to the jury;

---

[1] In *Fournier* we said that at this stage of the proceedings the evidence should be received preferably in the absence of the jury. In *People* v. *Andrades*, 83 P.R.R. 818 (1961), we pointed out that "the jury should be always withdrawn."

but if it is conflicting, the court *does not pass on its admissibility*, but recalls the jury, the evidence on its voluntariness is repeated in its presence, and it is submitted to the jury with proper instructions. *People* v. *Pérez*, 84 P.R.R. 173 (1961).

In *People* v. *Andrades*, 83 P.R.R. 818 (1961), the judge said in connection with a statement given by defendant that there were "elements of voluntariness" to warrant admission of his statement, but he explained that the purpose of this preliminary determination was none other than to justify the action of the court in submitting the same to the jury for consideration. However, he added clearly and expressly that it was the function of this deliberating body to decide whether the extrajudicial statements made by defendant were free and spontaneous. In disposing of an assignment of error similar to that raised herein by appellant Santos, we said that "Thus, the judge made it clear to the jury that it was their duty to make the final determination of voluntariness." [2]

■ Our description of the incident on the determination of the voluntariness of appellant's confession shows that the judge departed substantially from the local rule and that he conveyed to the jury his personal opinion on the matter by saying that he thought it was voluntary. It is to be noted that the statement in that connection was not, as in the *Andrades* case, conditioned on the fact that there were elements of voluntariness to warrant the submission of the evidence to the jury. No, it was a categorical expression. It is true that the same judge subsequently instructed the jury on the duty of that body to make the final determination on the matter, but he did not instruct them at any time to disregard completely his previous statement that "It [the voluntar-

---

[2] It is important to clarify that, unlike the situation in this case, in *Andrades* the defendant did not introduce any evidence to establish the involuntariness of his confession.

iness] was so determined as a matter of law and it is now a question for the jury." It is particularly significant that the magistrate expressly admitted before the jury the commission of another error on the probative effect of the admissibility of the confession in connection with the other codefendant,[3] but that he did not make expressly and clearly a like recognition on the impropriety of his opinion on the voluntariness of the latter. He merely said what is stated in this opinion on page 596. However, this statement was made in the absence of the jury and, therefore, it could not have the effect of wiping out any impression unfavorable to defendant which the jurors could have gathered from the judge's statement on the voluntariness of the confession.

2. In the course of the instructions to the jury on the possible verdicts, the trial judge stated as follows (Tr. Ev. 263) :

"If the ladies and gentlemen of the jury, after weighing the evidence as a whole, conclude beyond a reasonable doubt that on the day of the occurrence, we refer to May 23, 1959, namely, in the evening of May 22-23, 1959, in the Municipal District of Ciales, Puerto Rico, with the intent of committing larceny, or petty theft or a felony, they entered in the evening the commercial establishment of Eugenio Rivera Santos for the purpose of committing, *as they did,* larceny or petty theft, and that both defendants acted in concert and common agreement in order to commit the burglary, you must return a verdict of guilty of burglary in the first degree." (Italics ours.)

Once again the judge's personal opinion was conveyed to the jury. We can not determine to what extent the general instructions on the presumption of innocence [4] and rea-

---

[3] "Yesterday I gave you a different instruction from that which I am going to give you now ... We need to rectify. To rectify is human." (Tr. Ev. 190-91.)

The codefendant was found not guilty by the jury in both counts.

[4] Nor was the trial judge very fortunate in his statement when summing up the instruction on presumption of innocence in saying that "His presumption of not guilty subsists until the moment you reach a verdict after considering the entire evidence" (Tr. Ev. 252), for the same is sus-

600

sonable doubt could have overcome any impression gathered by the jurors from these erroneous statements of the court. It should be noted that if the purpose was to describe the offense imputed, the expression "as they did" was wholly superfluous since the instruction was complete and sufficient without it. The fact that the words of the information were used did not justify—without a clarification in that sense— the use of the phrase objected.

■ 3. After defendant's extrajudicial statement was admitted and read to the jury *on two occasions*, copy thereof was delivered to the jury which had it under consideration in the course of its deliberations. In *People* v. *Ramos*, 84 P.R.R. 542 (1962), as well as in *People* v. *Cruz, ante*, p. 124, we have held that it is error because it violates the express provisions of § 274 of the Code of Criminal Procedure, 34 L.P.R.A. § 783. However, the commission of this error did not lead to reversal because it was not prejudicial to defendants therein. The same circumstances which we considered in *Cruz* to decide that the error was not prejudicial—no defense evidence was introduced and the evidence of The People was simple and brief, without internal conflicts—are present here. It seems strange that the court itself instructed the jury that "The jurors ought to know that the purpose of reading this document is that you may keep it in your mind, in your memory. That, notwithstanding, the statement will form part of all the instruments and material of evidence which have been presented here at the time of deliberation" (Tr. Ev. 186).

■ As stated at the outset of this opinion, it is possible that any one of these errors, standing alone, was not prejudicial or sufficient to warrant reversal of the judgment of conviction, but weighing them as a whole and by their cumu-

---

ceptible of an interpretation in the sense that the only possible verdict is that of guilty. The correct instruction ought to be that the presumption is that he is innocent until he is found guilty after weighing the evidence.

lative effect,[5] it is clear that appellant did not have an impartial trial. The judgments rendered by the Superior Court, Arecibo Part, on October 20, 1959 will be reversed.

---

[5] We need not discuss the other two errors assigned in the able brief filed in appellant's name by Ismael H. Herrero, Jr. whom we appointed to render services to him in the prosecution of the petition for appeal. We wish to say that the brief shows study and devotion to the cause entrusted to him.